Gregory BURKE, Pat Clark, Mary Colclasure, Raymond Eggert, Mark Harwood, Timothy G. Henderlong, Dean Mcbrayer, Frank Morin, John Rosmanitz, Scott Spevacek, Michael Stallings, Terrell Taylor, Cathi Van Schouwen, Dennis Wilson, and a class of persons similarly situated, Appellants–Plaintiffs,

v.

TOWN OF SCHERERVILLE, Indiana, Appellee–Defendant.

No. 45A03–9912–CV–461.

Court of Appeals of Indiana.

Dec. 4, 2000.

Michael L. Muenich, Michael L. Muenich, P.C., Highland, Indiana, Attorney for Appellants.

Todd J. Kaiser, T. Joseph Wendt, Ogletree, Deakins, Nash, Smoak & Stewart, Indianapolis, Indiana, Attorneys for Amicus Curiae Indiana Builders Association.

Ronald E. Ellberger, George T. Patton, Jr., J. Christopher Janak, Bose, McKinney & Evans LLP, Indianapolis, Indiana, David M. Austgen, Austgen, Reed & Decker, P.C., Crown Point, Indiana, Attorneys for Appellee.

Karl L. Mulvaney, Candace L. Sage, Bingham Summers Welsh & Spilman LLP, Indianapolis, Indiana, Attorneys for Amici Curiae Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

## OPINION

KIRSCH, Judge

This case involves the dismissal of a declaratory action brought by Gregory Burke and other builders (collectively "Builders") against the Town of Schererville ("Town"), which: 1) challenges the validity of the Town's ordinances establishing sewer and water connection fees charged to persons seeking building permits; 2) seeks a refund of all fees collected by the Town under these allegedly invalid ordinances; and 3) seeks injunctive relief enjoining the Town from collecting such fees. On appeal, Builders raise several issues, which we consolidate and restate as: whether the Town's ordinances authorizing the collection of both sewer and water connection fees violate Indiana's Impact Fee Statute and exceed the Town's Home Rule power.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

### I. Sewer Connection Ordinances

Since at least 1975, the Town has imposed a flat-charge sewer connection fee upon all customers connecting to its sewer utility. Over the years, the Town periodically amended the amount of the sewer connection fee. In November 1976, the Town adopted Ordinance No. 648B, which established a new schedule of rates and a minimum tap-in charge[2] of $375 in order to produce revenue to cover the expenses of maintaining and operating the system, to provide funds for improvements, and to pay the principal and interest on outstanding revenue bonds. *Record* at 84. In October 1988, the Town enacted Ordinance No. 1085, which amended Ordinance No. 648B by increasing the sewer connection fee to $545. In November 1989, the Town adopted Ordinance No. 89–1131, which amended and restated Ordinance Nos. 648B and 1085 and established varying sewer connection fees based upon the cost of providing the anticipated usage for various types of customers. Ordinance No. 89–1131 states that the tap-in charge includes a fee for "capital improvements required to serve that use." *Id.*

Finally, on June 8, 1994, after conducting a public hearing, the Town adopted Ordinance No. 1239, which raised the fee for sewer connection to include a capacity charge for new customers. Under this Ordinance, the sewer connection fee is based upon a proportionate share of the costs to extend and expand the system to increase capacity in order to service new customers in areas not previously served. *Id.* at 75. Ordinance No. 1239 further states that "Each and every person and property owner . . . that shall connect to the sanitary sewer system . . . shall pay, in addition to the tap-in fee previously established and as might hereafter be amended, [a] capital buy[-]in charge as follows. . . ." *Id.* at 76. The Ordinance then provides a list of fees to be collected from different types of users. *Id.* A single-family dwelling unit is charged $1,362.[3] *Id.* Builders did not attend the public hearing or otherwise voice objection to Ordinance No. 1239.

### II. Water Connection Ordinance

On November 10, 1993, the Town enacted Ordinance No. 1257, which set the Town's water connection fees and also established a "System Development Charge" of $750 for new customers connecting to

---

1. We heard oral argument in this case on November 9, 2000.

2. The parties use the terms "connection fee" and "tap-in charge" synonymously.

3. According to the parties at oral argument, the "capital buy-in charge" and "connection fee" or "tap-in charge" amounts to approximately $1800.

the Town's water utility. In relevant part, the Ordinance provides:

> "In addition to the tap[-]in charge herein above established, each new customer shall be assessed a charge of $750.00 at the time of connection, which is calculated to be a pro rata portion of the utility's capital costs to develop the system, to extend to these new customers, so as not to have those capital costs be an inequitable burden upon existing customers."

*Id.* at 85. The Ordinance further states that it shall become effective immediately upon approval of the Indiana Utility Regulatory Commission ("IURC"). According to Builder's Second Amended Complaint, the IURC approved Ordinance No. 1257 in December 1993. Builders did not voice objection to Ordinance No. 1257.

Both the water connection fee and the sewer connection fee are one-time charges applying to all *new customers* seeking services, not simply to newly constructed buildings and residences.

### III. Builders' Challenge to the Ordinances

Builders filed their original Complaint on January 12, 1998, apparently challenging the sewer connection fees charged by the Town.[4] On February 3, 1998, Builders amended the Complaint.

The First Amended Complaint contained three counts challenging only the sewer connection fees charged by the Town. The first count, entitled "EXCESSIVE LICENSE FEE," consisted of a claim that the sewer tap-in charges are "obviously and largely beyond what is needed for the inspection services rendered [by the Town] and therefore violate Ind.Code § 36–1–3–8 (hereinafter "Home Rule Statute") and constitute an unconstitutional revenue tax." *Record* at 7. The second count, entitled "UNREASONABLE AND EXCESSIVE SERVICE CHARGE," further

alleged that under the Home Rule Statute, the sewer connection fees constitute an unconstitutional revenue tax because the charges bear no reasonable relation to "reasonable and just rates for services rendered" or to the actual cost of service provided by the Town. *Id.* The third count, entitled "ILLEGAL IMPACT FEES," alleged that the sewer connection fees also amount to impact fees for which the Town failed to properly adopt an impact fee ordinance pursuant to the statutory requirements of IC 36–7–4–1311.[5] The Town concedes that it did not adopt an impact fee ordinance.

The Town subsequently filed a motion to dismiss the complaint pursuant to Ind. Trial Rules 12(B)(1) and 12(B)(6). In its motion, the Town contended that the trial court lacked subject matter jurisdiction because Builders failed to preserve their right to judicial review by not following the exclusive statutory appeal procedure specified in the Municipal Sewage Works Act, IC 36–9–23–26.1. The Town further contended that Builders failed to state a claim for relief in that Builders failed to allege any facts indicating that they may be entitled to relief under the Municipal Sewage Works Act. Additionally, the Town claimed that Builders failed to state a claim for relief because they voluntarily paid the sewer connection fees. Reciting the rule that fees and taxes voluntarily paid to a municipality may not later be recovered in absence of a statute authorizing recovery, the Town claimed that the case should be dismissed because Builders have no right to a refund of the fees.

After conducting a hearing, the trial court granted the Town's motion to dismiss the First Amended Complaint on December 9, 1998. In its Order, the trial court stated that the motion was being granted pursuant to T.R. 12(B)(6) for failure to state a claim.

---

4. Neither the Record nor the Supplemental Record contains the original Complaint.

5. The series 1300 through 1399 of IC 36–7–4 is referred to as the "1300 series" or Indiana's Impact Fee Statute.

On December 16, 1998, Builders filed a Second Amended Complaint containing eight counts for relief, including the three previously dismissed sewer connection claims as well as five new claims for relief. Counts I through III are identical to the three claims relating to the sewer connection fees that the trial court dismissed for failure to state a claim for relief. Counts IV through VI are essentially identical to Counts I–III, with the exception that these three new claims challenge the Town's water connection fees and seek a refund of such fees. Count IV, entitled, "EXCESSIVE LICENSE FEE FROM WATER SYSTEM DEVELOPMENT CHARGE," alleges that the Town's water system development fees violate the Home Rule Statute and constitute an unconstitutional revenue tax in that the fees are beyond the actual cost of the water tap or other services rendered. Count V, entitled, "UNREASONABLE AND EXCESSIVE WATER SYSTEM DEVELOPMENT CHARGE," alleges that the water system development fees violate the Home Rule Statute and amount to an unconstitutional revenue tax in that the fees bear no reasonable relation to "reasonable and just rates for services rendered" or to the actual cost of services rendered by the Town. *Id.* at 90. Count VI, entitled "ILLEGAL IMPACT FEE FROM WATER SYSTEM DEVELOPMENT CHARGE," alleges that the water system development charges are impact fees, which are invalid because the Town failed to adopt an impact fee ordinance authorizing the charges.

Count VII is a declaratory judgment claim, seeking a declaration that the ordinances establishing the sewer and water connection fees are invalid and an order refunding these fees. Finally, Builders in Count VIII request injunctive relief from collection of the fees pending the outcome of the case.

In response, the Town filed its Motion to Dismiss the Second Amended Complaint on March 11, 1999, relying again upon lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. After conducting a hearing, the trial court dismissed the Second Amended Complaint on November 16, 1999. This appeal ensued.

## DISCUSSION AND DECISION

Builders appeal the trial court's dismissal of their Second Amended Complaint alleging that the Town's sewer and water connection fees are unreasonable, excessive, and illegal impact fees. In support of its Motion to Dismiss the Second Amended Complaint, the Town relied upon both T.R. 12(B)(1) and T.R. 12(B)(6). Because the trial court did not articulate a basis for its dismissal of Builders' Second Amended Complaint, we consider both standards of review in reaching our decision.

When reviewing a T.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, the relevant question is whether the type of claim presented by the plaintiff falls within the general scope of the authority conferred upon the court by constitution or statute. *Samm v. Great Dane Trailers,* 715 N.E.2d 420, 424 (Ind. Ct.App.1999). A motion to dismiss for lack of subject matter jurisdiction presents a threshold question with respect to a court's power to act. *Id.* The trial court has wide latitude to devise procedures to ferret out the facts relevant to jurisdiction and in weighing the evidence to resolve factual disputes affecting the jurisdictional question. *Wine–Settergren v. Lamey,* 716 N.E.2d 381, 384 (Ind.1999). A party appealing a trial court's dismissal for lack of subject matter jurisdiction has the burden of establishing that the trial court erred in ruling on the jurisdictional question. *Id.*

In reviewing a motion to dismiss granted pursuant to T.R. 12(B)(6), our standard of review is well settled. A T.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Borgman v. Aikens,* 681 N.E.2d 213, 216 (Ind.

Ct.App.1997), *trans. denied.* We, therefore, view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* at 216–17. The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* at 217. Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Mart v. Hess,* 703 N.E.2d 190, 193 (Ind.Ct.App. 1998).

## I. Sewer Connection Fees

Builders argue that the Town's establishment of the sewer connection fees exceeded its authority because the fees violate the Home Rule Statute and the Indiana Impact Fee Statute. In addressing the Home Rule Statute, specifically IC 36–1–3–8(a)(5)–(6), Builders argue that the Town lacked the authority to impose a tax, a license fee, or a service charge. Builders also object to the sewer connection fees because they amount to illegal impact fees, which improperly shift the cost of providing services to new development from the general tax base to the new development. They contend that the sewage connection fees are impact fees, which are prohibited unless the Town first complies with IC 36–7–4–1311 by adopting an impact fee ordinance. Because the Town failed to do this, it cannot continue to collect the fees as a means of defraying the costs precipitated by the new development.

The Town responds that the Municipal Sewage Works Act, IC 36–9–23–25, grants it broad discretion to establish sewer fees and that it did not act in violation of the statute. Further, the Municipal Sewage Works Act controls in this case and consequently preempts both the Home Rule Statute and Indiana Impact Fee Statute. The Town also argues that the sewer connection fees are not impact fees because the fees apply to all new customers, including existing homes and businesses not just to new development. Moreover, the Municipal Sewage Works Act, IC 36–9–23–26.1, establishes an exclusive statutory procedure for objecting to the sewage connection charges, and Builders did not comply with the statutory procedure.

Builders respond that they could not have followed the statutory procedures. They contend that they lacked standing to challenge the sewage connection fees because they did not own the property being developed at the time the ordinance establishing the fees was approved. IC 36–9–23–26.1(a) provides that "[o]wners of property connected or to be connected to and served by the sewage works ... may file a written petition objecting to the rates and charges of the sewage works...." Builders insist that they were not owners of the properties and had no obligation to object under the statute.

Builders also contend that the Municipal Sewage Works Act does not apply to this case because the Act was adopted in 1991, a full two years *after* the Town adopted Ordinance No. 89–1131 in November 1989, which established the $545 sewer charges. According to Builders it was impossible to follow the statutory procedures to challenge the sewer charges in 1989 because the appeal procedure was not even available. However, the Town responds that it enacted Ordinance No. 1239 in 1994, which amended the prior sewer fee ordinance to also include a capacity charge. Therefore, Builders had the opportunity to attack this ordinance by following the statutory appeal procedure.

Resolution of this dispute essentially turns on whether the Impact Fee and Home Rule Statutes can coexist independently of the Municipal Sewage Works Act. We conclude that they can.

The General Assembly has provided separate avenues for municipalities to impose sewer fees, which may include both impact fees and flat fee tap-in charges. By virtue of the Home Rule Statute, the General Assembly has also provided a limitation on this authority. It is a well-established rule of statutory construction that statutes are accorded every reasonable presumption supporting their validity. *Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 141 (Ind.1999). As a result, we must assume, in the absence of a clear showing to the contrary, that the legislature intended these statutes to coexist. Moreover, we also must assume the legislature is mindful of both court decisions and existing law. *Pea v. Pea*, 498 N.E.2d 110 (Ind.Ct.App. 1986), *trans. denied.* Municipalities have long been afforded the authority to establish sewer connection fees. Therefore, we presume that the legislature was mindful of any potential conflict between the statutes at issue here and that they intended the statutes to coexist. If this results in an imperfect system that creates some conflict then it is the responsibility of the legislature to correct these imperfections and not ours. *Wright v. Gettinger*, 428 N.E.2d 1212, 1220 (Ind.1981). In any event, we discern no conflict so irreconcilable that we must set aside one provision of the law for the other. In our view, the statutes can logically and legally coexist.

Finally, we must presume the legislature intended to adopt a meaningful statute and not an absurdity. *Bethlehem Steel Corp. v. Indiana Dept. of State Revenue*, 597 N.E.2d 1327, 1332 (Ind.Tax 1992). Here, although the Town did not adopt an impact fee ordinance, the Builders' argument that the Town was required to do so would result in a clear conflict between the Impact Fee Statute and the Municipal Sewage Works Act. We cannot presume that the legislature intended such an incongruous result.

Based upon the foregoing, we conclude that the Town did not violate the Impact Fee Statute in establishing the sewer connection fees. Furthermore, the Municipal Sewage Works Act, IC 36–9–23–26.1(a) provides an exclusive procedure whereby customers may appeal the fees. It is undisputed that Builders failed to follow this procedure. Accordingly, we cannot conclude that the trial court erroneously dismissed Builders' sewer connection claims.

## II. Water Connection Fees

Builders initially argue that the water connection fees are illegal impact fees and in violation of the Town's home rule powers. Their arguments in this respect mirror their arguments that the sewage connection charges are illegal impact fees and in violation of the Home Rule Statute, which we have previously rejected.

Builders next argue that if the action is not allowed to proceed, then they effectively have no statutory remedy. They seem to acknowledge their failure to follow the statutory procedure provided by IC 8–1.5–3, *et seq.*, which gives the IURC exclusive jurisdiction to approve water rates and charges and further provides an appeal to this court from the IURC's final order. Despite this, Builders contend that pursuant to the statute they were *not* "[o]wners of property connected to or to be connected to and served by the waterworks" and therefore had no standing to object to the water ordinance. IC 8–1.5–3–8.2. According to Builders, most of them did not own the properties and therefore could not have been adversely affected by the IURC approval of the water charges in 1993. However, IC 8–1.5–3–8.2 deals with jurisdictions that have opted-out of IURC jurisdiction. Here, because there is no indication that the Town has opted-out of IURC jurisdiction, we conclude that this portion of the statute does not have any applicability to this case.

We further conclude that the trial court properly dismissed the claims con-

cerning the water connection fees. Pursuant to IC 8–1.5–3, *et seq.*, the IURC has exclusive jurisdiction to approve a municipality's water rates and charges. In the present case, the IURC approved the Town's water connection charges in 1993. Pursuant to IC 8–1–3–1, a party seeking to challenge the IURC's approval of such charges may within thirty days appeal the order to this court. Here, it is undisputed that Builders failed to challenge the IURC's order. Accordingly, Builders forfeited their right to challenge the water connection fees and cannot now circumvent the exclusive statutory procedure.

Affirmed.[6]

FRIEDLANDER, J., and DARDEN, J., concur.

---

6. Because we affirm the dismissal by the trial court, we do not address Builders' argument that their class action claim was improperly dismissed or the Town's argument that the Indiana Tort Claims Act, IC 34–4–16.5–1, *et seq.* applies to this case.