The **CITY OF JASPER, Indiana and the City of Jasper, Indiana Common Wage Committee, Appellants–Defendants,**

v.

**Bret G. COLLIGNON, et al., Appellees–Plaintiffs.**

No. 19A01–0210–CV–386.

Court of Appeals of Indiana.

May 30, 2003.

James H. Hanson, Lynne D. Lidke, A. Jack Finklea, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, Attorneys for Appellants.

Indiana Association of Cities and Towns, Indiana Municipal Lawyers Association, R. Thomas Bodkin, Pamela Hensler, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, Associated Builders and Contractors, Indiana Chapter, Inc., A. Donald Wiles, II, Harrison & Moberly, LLP, Indianapolis, IN, Attorneys for Amici Curiae.

Charles L. Berger, Jennifer L. Ulrich, Berger and Berger, Evansville, IN, Attorneys for Appellees.

Nancy Guyott, Commissioner, Indiana Department of Labor, J.T. Whitehead, Indianapolis, IN, Attorney for Amicus Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In March 2002, Bret G. Collignon, along with twenty-seven other plaintiffs,[1] filed their Verified Complaint for Declaratory Relief and Permanent Injunction against the City of Jasper, Indiana ("the City") and the City Common Wage Committee ("the Wage Committee"), challenging the Wage Committee's determination of the common hourly wage to be paid for skilled, semi-skilled, and unskilled labor in Dubois County for five municipal projects. The Complaint sought to permanently enjoin

---

1. The other plaintiffs are William Rex Anderson, Corey Blanchard, Mark Clery, Sam Cole, William Cole, Jerry Cooper, Jan Cunningham, Brian Dicus, Edward Eckert, Dan Flamion, Scott Gehlhausen, Dean Gogel, Timothy Hart, Dean Hassfurther, Kevin Hauser, Brian Helderman, Michael Hildenbrand, James Himsel, Timothy Horney, Stanley Jacob, Albert Kluemper, Matt Leinenbach, George Mehringer, Maurice Rickleman, David Verkamp, Charles Wakom, and Southwestern Indiana Building and Construction Trades Council.

the City from utilizing those wages. Following a hearing, the trial court entered judgment in favor of Collignon and the other plaintiffs and enjoined the City from awarding any contracts for the five projects based on the Wage Committee's determination. The City and the Wage Committee now appeal.

## ISSUES

1. Whether the trial court erred when it concluded that the Wage Committee's determination of the common construction wage for each class of labor was arbitrary and capricious.

2. Whether the trial court erred when it concluded that the Wage Committee failed to carry out its statutory responsibility of investigating the wages currently being paid in Dubois County.

We reverse and remand with instructions.[2]

## FACTS AND PROCEDURAL HISTORY

Pursuant to Indiana Code Section 5–16–7–1, see Statutory Framework, infra, the City established the Wage Committee to determine the common construction wage for the following five public improvement projects: (1) construction and relocation of Portersville Road, with an estimated cost of $300,000; (2) painting and improvement of the water tower at Plymouth and Dodge Streets, with an estimated cost of $300,000; (3) demolition, construction and remodeling of electric distribution facilities and construction of storage facility, with an

estimated cost of $470,000; (4) removal and replacement of approximately 925 feet of storm sewer tile under Northwood Avenue, with an estimated cost of $260,000; and (5) construction of a sports complex, with an estimated cost of up to four million dollars. The Wage Committee consisted of the following five individuals: Don Wehr, industry representative; Grayson Goodness, taxpayer representative; Rodney Bell, taxpayer representative; Gary Cahill, the Governor of the State of Indiana's representative; and Kenneth Overton, labor representative.

On March 5, 2002, the Wage Committee convened to hear evidence and establish the common construction wage for the five projects. Representatives from the City with specific knowledge of each of the five projects presented brief comments regarding the nature of each project and its estimated cost. Then, Bell made a motion that the Wage Committee "use local, non-labor union [sic] wherever possible." Bell's motion was not seconded, and Overton responded, "I think we're getting way ahead of oursel[ves] . . . because it's not a union, nonunion issue. It's a common paid wage issue."

Thereafter, three persons presented evidence of the hourly wages most commonly paid in Dubois County for skilled, semi-skilled, and unskilled labor. First, Cahill, a member of the Wage Committee as the Governor's representative, distributed survey information collected by the Indiana Department of Workforce Development ("DWD"). The DWD information was derived from surveys of both union and non-

2. The Indiana Association of Cities and Towns ("IACT") and the Indiana Municipal Lawyers Association ("IMLA") raise two issues in their amicus curiae brief. First, IACT and IMLA question whether Collignon and the other plaintiffs have standing to sue. But because they address standing only in a footnote and fail to provide any citation to authority, they have waived that claim. In addition, they assert that the trial court exceeded its authority when it failed to remand for further proceedings before the Wage Committee. But because we reverse the trial court, the second argument is moot.

union employers and contractors who performed work in Dubois County. The surveys contained information from August 1999 through December 2000.

Next, J.R. Gaylor of Associated Builders and Contractors of Indiana ("ABC") presented proposed wages which ABC had gathered by survey within three weeks of the March 5 hearing. Gaylor explained that "a vast majority of workers and contractors in [the] county are not covered by collective bargaining agreements" and that ABC's survey covered only non-union contractors located in Dubois County. In addition to the proposed wages, ABC provided the Wage Committee members with a copy of the survey form it had sent to contractors and a copy of the common construction wage statute.

Overton, the labor representative on the Wage Committee, also presented proposed wages. Specifically, Overton submitted proposed wage rates for one of the municipal projects, namely, the construction and relocation of Portersville Road. In support of his proposed wages, he presented three surveys that included wage information related to work performed in Dubois County by out-of-town contractors in 2001. Overton also submitted copies of six previous wage committee common construction wage determinations for projects in Dubois County, which were signed and dated on various dates throughout 2001, as well as on January 3, 2002.

ABC's proposed wages were lower for all labor classifications than the wages proposed by both DWD and Overton. Wehr, Goodness and Bell voted to adopt ABC's proposed wages as the common construction wage for each labor classification for all five projects. Overton and Cahill opposed adoption of ABC's wages. Thus, the Wage Committee adopted ABC's proposed wage scales by a vote of three to two.

On March 18, 2002, Collignon and the other plaintiffs filed their complaint seeking declaratory and injunctive relief alleging, in part, that the Wage Committee members "who voted to set the wages as determined on March 5, 2002, acted arbitrarily and capriciously in the setting of the wages for the projects before them." The trial court conducted an evidentiary hearing on July 23, 2002, during which the parties presented stipulated exhibits, including a transcript and videotape of the March 5 Wage Committee hearing and the three sets of proposed wages submitted by DWD, ABC and Overton. In addition, Cahill and Overton testified in support of the plaintiffs' claim that the Wage Committee's action was arbitrary and capricious. The City and the Wage Committee presented testimony from Sandra Hemmerlein, the attorney for the City, and Goodness and Wehr. At the close of evidence, the court asked the parties to submit proposed findings and conclusions, and on August 22, 2002, the court issued its Findings of Fact, Conclusions of Law and Judgment in favor of the plaintiffs, which provide, in relevant part:

### FINDINGS OF FACT

\* \* \*

6. There are no issues regarding the procedure or substance of whether the Committee was properly called into existence, constituted, the scheduling of the hearing, or matters pertaining to the commencement of the hearing.

7. There were three sources of evidence presented to the Committee during the March 5, 2002 hearing.

\* \* \*

12. The figures presented by [Gaylor] represented an average wage for

various classifications of skilled, semi-skilled and unskilled labor.

13. The evidence presented by [Gaylor], was that the vast majority of Dubois County contractors were non-union. There was no information presented as to whether these surveyed non-union Dubois County contractors constituted the majority of wages paid by all contractors for work in Dubois County, Indiana.

14. There was no evidence of whether the particular wages paid by those non-union Dubois County contractors or employers was for work performed in Dubois County, Indiana.

\* \* \*

17. [Overton's] evidence consisted of prior common wage determinations for Dubois County, Indiana, surveys of two (2) Evansville, Indiana based contractors/employers of wages those contractors/employers paid for projects performed in Dubois County, and information regarding wages for heavy highway, utility and building work in Dubois County.

18. Neither the Committee, nor any member of the Committee, prevented [Overton], from presenting any evidence. The Court, having reviewed the video tape, transcript thereof, the evidence presented at the hearing and the demeanor of the witnesses while testifying, certainly believes that there was [a] lack of the attitude of cooperativeness between [Wehr, Goodness, Bell] on one hand[,] and [Cahill] on the other[,] and further between [Wehr, Goodness and Bell] on one hand and [Overton] on the other.

Such uncooperativeness or differences, although not conducive to a full and complete fact-finding process, was not such that [Overton] was prevented from presenting any evidence to the Committee.

19. None of the evidence presented to the Committee at the hearing contained adequate information for the Committee to determine the approximate number of workers employed or paid for any of the various classifications or wages in Dubois County, Indiana.

\* \* \*

22. The common construction wages for many of the classifications determined by the Committee on March 5, 2002 was substantially less than the common construction wage determined by other committees for the same classification approximately one (1) year earlier.

23. One (1) member of the Committee, [Bell], expressed an intention at the beginning of the hearing that the Committee utilize only, local, non-union labor, or contractors wherever possible.

## CONCLUSIONS OF LAW

\* \* \*

5. The Committee is granted the authority and charged with the responsibility, by statute[,] of following a procedure whereby the Committee determines for Dubois County, Indiana, after a factual investigation, a common construction wage for each classification of labor to be utilized on each proposed project.

6. The common construction wage(s) determined by the Committee, for

each classification of labor on each of the proposed projects shall not be less than that which are currently being paid in Dubois County, Indiana.

7. The evidence presented by [Cahill] from [DWD] is insufficient to establish the foundation for any rate of wages currently being paid in Dubois County, Indiana.

8. The evidence presented by [Gaylor] is, in and of itself, insufficient to establish the rate of wages currently being paid in Dubois County, Indiana.

9. The evidence presented by [Overton] is sufficient to establish a rate of wages that are currently being paid in Dubois County, Indiana. In making this conclusion, the Court is not directing or mandating the adoption of a particular rate of wages.

10. The actions of the City of Jasper, and three (3) members of the Committee, [Wehr, Goodness and Bell] on one hand, [Cahill, and Overton] on the other, reflect that the Committee failed to execute its statutory responsibility by not making an investigation of the facts as they existed and upon which to base a common wage determination. The City of Jasper and three (3) members of the Committee on one hand and the other two (2) members of the Committee, each in his/her/their own way proceeded to act without regard to other members of the Committee.

11. The Committee's focus was on the issue of the wages that were being paid by contractors or employers geographically located within Dubois County, Indiana and not on the issue of wages that were being paid for work or projects performed within Dubois County, Indiana.

12. The Committee's adoption of the common construction wage as each and every one of the proposed scale of wages from [Gaylor's] evidence was simply the adoption of a non-union wage scale.

13. The Committee, in adopting the [Gaylor] evidence, in total, as its common construction wage failed to carry out its statutory responsibility of investigating the rate of wages that are currently being paid in Dubois County, Indiana.

14. The Committee thus acted arbitrarily and capriciously in that this Court cannot find from the evidence or proper, legitimate, and natural inferences flowing therefrom, a rational basis for the decision of adopting the [Gaylor] evidence as the common construction wage.

15. The Committee acted in violation of law, I.C. 5–16–7–1 and the adoption of the common construction wage at the March 5, 2002 hearing was contrary to the law of this State, is invalid and void.

\* \* \*

18. Based upon the foregoing, the Court FINDS for the Plaintiff[s] and the Defendant[s][are] hereby preliminarily and permanently enjoined from awarding any contract, for any of the five (5) proposed projects set forth in Finding of Fact paragraph number one (1) ... containing the common construction wage(s) determined by the Committee, which the Court has

herein determined are not in compliance with the laws of the State. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ The Administrative Orders and Procedures Act ("AOPA"), Indiana Code Section 4–21.5–1–1 *et seq.,* applies only to agencies. Ind.Code § 4–21.5–2–3. Under Indiana Code Section 4–21.5–1–3, the term "agency" expressly excludes political subdivisions. Both the City and the Wage Committee are political subdivisions. *See* Ind.Code § 36–1–2–13 (defining "political subdivision" as municipal corporation or special taxing district); Ind.Code § 36–1–2–10 (defining "municipal corporation" in part as "unit" or separate local governmental entity that may sue and be sued); Ind.Code § 36–1–2–23 (defining "unit" as county, municipality, or township); Ind. Code § 36–1–2–11 (defining "municipality" as city or town). Therefore, the AOPA does not govern the Wage Committee proceedings.

■ Still, our courts have applied general administrative law principles outside the context of an agency action governed by the AOPA. For example, when a party seeks relief in a trial court from a determination made by a local zoning or planning board, we turn to administrative law principles for the appropriate standard of review. *See Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34, 36–37 (Ind.2001); *Cundiff v. Schmitt Dev. Co.,* 649 N.E.2d 1063, 1066 (Ind.Ct.App.1995). And this court has utilized a similar administrative law standard where, as here, the trial court enjoined a county board of commissioners from awarding demolition contracts based upon a local wage committee's determination of the prevailing wage. *See Board of Comm'rs v. Jones,* 457 N.E.2d 580, 588 (Ind.Ct.App.1983) (discussing whether wage committee's actions under former prevailing wage statute were "arbitrary and capricious"). Accordingly, as in other non-AOPA cases where our courts have relied upon administrative law principles, we apply those same principles here.

■ Our supreme court stated in *Equicor,* 758 N.E.2d at 36–37:

Indiana Code [S]ection 4–21.5–5–14 prescribes the scope of court review of an administrative decision. That section provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Section 4–21.5–5–14(a) further provides that "the burden of demonstrating the invalidity of the agency action is on the party ... asserting invalidity." In reviewing an administrative decision, a court is not to try the facts de novo or substitute its own judgment for that of the agency. This statutory standard mirrors the standard long followed by this Court.

On appeal, to the extent the trial court's factual findings were based on a paper record, this Court conducts its own de novo review of the record. If the trial court holds an evidentiary hearing, this Court defers to the trial court to the extent its factual findings derive from the hearing. . . . To the extent findings turn solely on [a] paper record, review is de novo.

(Citations omitted). Moreover, if a party alleges that the administrative body committed an error of law, both the trial court

and this court on appeal owe no deference and review questions of law de novo. *See Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992) (involving appeal from local zoning board decision).

 Here, the trial court based its decision primarily on stipulated exhibits, including both a videotape and written transcript of the March 5 Wage Committee hearing and copies of the evidence presented for the Wage Committee's consideration. But the court also heard testimony from various witnesses, including members of the Wage Committee. Thus, while we defer to the trial court regarding those findings which are derived from testimony presented at the evidentiary hearing, we owe the trial court no deference on those findings based upon its review of the stipulated exhibits. *See Equicor,* 758 N.E.2d at 37 (stating where both appellate and trial court review same paper record, there is no reason for appellate court to defer to trial court) (quoting *Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997)).

### Statutory Framework

Indiana Code Section 5–16–7–1 provides:

(a) Any firm, individual, partnership, limited liability company, or corporation that is awarded a contract by the state, a political subdivision, or a municipal corporation for the construction of a public work, and any subcontractor of the construction, shall pay for each class of work described in subsection (c)(1) on the project a scale of wages that may not be less than the common construction wage.

(b) For the purpose of ascertaining what the common construction wage is in the county, the awarding governmental agency, before advertising for the contract, shall set up a committee of five (5) persons as follows:

(1) One (1) person representing labor, to be named by the president of the state federation of labor.

(2) One (1) person representing industry, to be named by the awarding agency.

(3) A third member to be named by the governor.

(4) One (1) taxpayer who pays the tax that will be the funding source for the project and resides in the county where the project is located. The owner of the project shall make the appointment under this subdivision.

(5) One (1) taxpayer who pays the tax that will be the funding source for the project and resides in the county where the project is located. The legislative body (as defined in IC 36–1–2–9) for the county where the project is located shall make the appointment under this subdivision.

(c) As soon as appointed, the committee shall meet in the county where the project is located and determine in writing the following:

(1) A classification of the labor to be employed in the performance of the contract for the project, divided into the following three (3) classes:

(A) Skilled labor.

(B) Semiskilled labor.

(C) Unskilled labor.

(2) The wage per hour to be paid each of the classes.

The committee is not required to consider information not presented to the committee at the meeting. IC 5–14–1.5 (open door law) applies to a meeting of the committee.

(d) The rate of wages determined under subsection (c) shall not be less than the common construction wage for each of the three (3) classes of wages

described in subsection (C) that are currently being paid in the county where the project is located.

Moreover, Indiana Code Section 5–16–7–4 provides:

"Common construction wage" means a scale of wages for each class of work described in section 1(c)(1) of this chapter that is not less than the common construction wage of all construction wages being paid in the county where a project is located, as determined by the committee described in section 1(b) of this chapter after having considered:

(A) reports from the department of workforce development; and

(B) any other information submitted by any person to the committee established under section 1(B) of this chapter.

### Issue One: Arbitrary and Capricious Wage Determination

■ The City and the Wage Committee first assert that the trial court erred when it determined that the Wage Committee's decision was arbitrary and capricious. Specifically, they claim that the evidence submitted by ABC was sufficient to support the Wage's Committee's determination. They further argue that the trial court improperly reweighed the evidence and substituted its judgment for the Wage Committee's when it determined that ABC's evidence was insufficient, and that Overton's evidence was sufficient, to establish the common construction wage in Dubois County.

■ Our supreme court has stated that " '[a]n action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action.' " *South Gibson School Bd. v. Sollman,* 768 N.E.2d 437, 441 (Ind.2002) (quoting *Indiana Civil Rights Comm'n v. Dela-*

*ware County Circuit Court,* 668 N.E.2d 1219, 1221 (Ind.1996)). Stated differently, "[a]n arbitrary and capricious decision is one which is patently unreasonable." *City of Indianapolis v. Woods,* 703 N.E.2d 1087, 1091 (Ind.Ct.App.1998), *trans. denied.* "It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion." *Id.* As we stated in *Jones,* 457 N.E.2d at 589, "it is arbitrary and capricious for a prevailing wage committee to make its determination in disregard of facts relevant to that determination." And where "it appears that the committee made a good faith effort to determine what wages were locally prevalent," and it is "clear that the wages eventually chosen by the committee were not 'willful and unreasonable action without consideration and in disregard of the facts and circumstances,' " the committee's actions are not arbitrary and capricious. *Id.* at 590 (quoting *State Bd. of Tax Comm'rs v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 121 Ind.App. 302, 96 N.E.2d 279, 282 (1951)).

The Wage Committee in this case adopted ABC's proposed hourly wage scales. Prior to the vote, Gaylor, the ABC representative, made an oral presentation to the Wage Committee and distributed a packet of information to each committee member that included the following: (1) a copy of ABC's proposed hourly wages for a variety of job classifications that included skilled, semi-skilled, and unskilled labor; (2) a copy of the survey form it sent to contractors in Dubois County; and (3) a copy of the common construction wage statute. Gaylor explained that ABC "[does] survey wage information that can be helpful to the committee." He further commented as follows:

I would like to start out looking through [the packet of information] and

just sharing a little bit of background about the construction environment here in Dubois County, because I think it's very relevant to, to your decision today. And it's certainly a, a backdrop to the wage information that we, we discovered.

In looking at the county, it appears that the vast majority of workers and contractors in this county are not covered by collective bargaining agreements. I'm sure you'll see that information shortly. But the majority, over eighty percent, are not covered by agreements of the Federation of Labor.

* * *

So, even looking at the density statewide and then compared to Dubois County, it shows you that the work force here is, is less dense in regards to the collective bargaining agreements.

And, and I guess we think that's important, since the fact that if the majority of the commonly paid wage isn't the collective bargaining wage, what is it? So, that's where we come in, in regards to surveying the, the wages that aren't collectively bargained. And we think that gives a very accurate account of, of this county.

I was real pleased with the overall sampling—a, a very strong sampling in, in our survey here. I did want to share just a couple of things in the back. Our survey format that we did survey and send out to the Dubois County contractors is back here for you, so you saw what kind of survey was given.

These have been done just in the last three weeks. So, these are extremely current; there are hot-off-the-press numbers. And again, I believe that adds to the accuracy.

* * *

We have broken these down by classes—the skilled, semi-skilled, and unskilled. If there is an unskilled that's not listed—for example, in the first one, asbestos abatement, that's not an accident. We just don't think there are unskilled asbestos workers.

We also have listed the [job] classifications that, I think, cover all ... the projects that were being described. I think all of these classifications or, or the projects adequately cover any classifications needed.

Again, as the law prescribes, fringe benefits are to be considered, and we did ask for that information; and that's included beyond the wage. And then, so, we've got a wage rate of fringe benefit number and then a total for you.

* * *

I do want to emphasize that these are from Dubois County contractors only, as the law prescribes, as well. These are not of area wages of outside the county.

After discussion with Wage Committee members about the differences between DWD's survey and ABC's survey, Gaylor further stated:

I guess we think the strength of our survey is, is the number of members of our association here in the county. They really cover the largest general contractors and the largest subcontractors in this county, are, are all members of ABC that have reported this survey. And so, I feel very, very good about the sample numbers here.

Additionally, Gaylor emphasized that the statutory definition of "common construction wage" requires that the committee consider *all* construction wages in the county and that, in his opinion, ABC's survey was "very accurate in what's com-

monly being paid." When Cahill inquired whether ABC's survey results included any wages from union contractors, Gaylor responded:

> [T]hese numbers really represent the non-collective bargaining numbers. And, and that's why I pointed out earlier that the reason I ... think that's significant is that's really the vast majority of the contractors in this county. And that's why we think that's a very accurate number.

Moreover, the document which contained ABC's proposed wages stated in relevant part, "With 2/3rds of construction wages paid in Dubois County as open shop rates and not collectively bargained, the wages below represent the *most commonly paid construction wages in Dubois County at this time.*" (Emphasis added).[3]

Again, in addition to ABC's proposed wages, the Wage Committee also considered evidence submitted by Overton, the labor representative, and Cahill, who presented wages based upon a DWD survey. But at the evidentiary hearing, Goodness testified that he "voted for the ABC figures because [he] felt they were the most accurate, the most common wages that are paid in Dubois County." He further explained that his decision was based, at least in part, on his personal knowledge of the construction industry in the county.

Specifically, he stated that two men from "the two major contractors" in the county appeared at the March 5 meeting and that at least one of them stated that he had filled out and returned the ABC survey.

Similarly, Wehr testified at the evidentiary hearing that, after considering the evidence presented, he voted for ABC's proposed wages because he believed those figures "most accurately reflected what was most frequently paid in Dubois County." He, too, recalled seeing two contractors from Dubois County at the meeting and explained that both of those contractors stated that they had responded to the ABC survey but had not received the DWD survey. Like Goodness, Wehr had personal knowledge that these were two of the larger contractors in Dubois County.

In reviewing the trial court's conclusion that the Wage Committee's determination was arbitrary and capricious, our opinion in *Jones* is instructive.[4] In that case, the wage committee was comprised of three members, two of whom presented evidence of the prevailing wage in the locality. The labor representative submitted one set of proposed wages, and the industry representative presented different wages. After considering the opposing sets of wages, the committee voted 2 to 1 to adopt the labor representative's wage scales. *Id.* at 583. The sole committee member who did

---

3. ABC's survey information set forth various job classifications and proposed wages for each. For example, for asbestos abatement and masons, the information provided:

| Classifications | Classes/Wages/Fringes/Total | | |
|---|---|---|---|
| Asbestos Abatement | | | |
| Removes and discards asbestos materials | | | |
| Skilled | $16.30 | $3.26 | $19.56 |
| Semi-skilled | $12.23 | $2.45 | $14.68 |
| Masons | | | |
| Lays and sets building materials, brick & stone and Finishes surfaces | | | |
| Skilled | $16.50 | $3.30 | $19.80 |
| Semi-skilled | $12.38 | $2.48 | $14.86 |
| Unskilled | $ 9.90 | $1.99 | $11.89 |

4. *Jones* involved the former prevailing wage statute, Indiana Code Section 5–16–7–1 (1994).

not present proposed wages, Stone, was the governor's appointee to the committee and voted to adopt the labor representative's wages. Stone explained that she believed those wages "most accurately represented the prevailing wage for area construction workers," and while she considered the other proposed wages, she found them inapposite. *Id.* She also based her decision, in part, on her knowledge of wages in the construction industry and, in part, on the personal knowledge that the same wage scale had been paid on other projects in that area. *Id.*

On appeal, we rejected the Appellants' assertion that the committee made its wage determination without regard for prevailing wage rates in the locality. *Id.* at 590. Rather, we concluded that the committee "made a good faith effort to determine what wages were locally prevalent." *Id.* And because the wages the committee chose did not constitute "willful and unreasonable action without consideration and in disregard of the facts and circumstances," we held that the wage determination was not arbitrary and capricious. *Id.*

Similar to the circumstances in *Jones,* the Wage Committee here was presented with three different proposed wages scales, all of which alleged to represent the most common wages paid in Dubois County. After reviewing the evidence submitted, and taking into consideration personal knowledge of the industry and contractors in the area, the Wage Committee chose to adopt ABC's wages as the common construction wage for the five projects. Both Wehr and Goodness testified that they considered all of the evidence equally but found ABC's information to be the most accurate representation of the common wage in Dubois County. Thus, like in *Jones,* we cannot conclude that the Wage Committee willfully disregarded facts presented at the March 5 hearing. Rather, our review of the record reveals that the Wage Committee's determination was rationally based upon Gaylor's presentation and the ABC survey.

█ Still, Collignon argues that the court properly concluded that the Wage Committee acted arbitrarily and capriciously because the court could not "find from the evidence or proper, legitimate, and natural inferences flowing therefrom, a rational basis for the decision of adopting the [ABC] evidence as the common construction wage." In support, Collignon points out that ABC's evidence did not contain wages paid for specific projects performed in Dubois County. Rather, ABC's evidence focused on wages being paid by contractors located within the county. He further contends that the Wage Committee adopted ABC's wages with no evidence regarding the actual number of employees in Dubois County who received such wages. And the trial court addressed many of those same concerns in its findings and conclusions. *See* Finding Nos. 13, 14, 19, *supra.*

█ However, both this court and the trial court must be mindful of the applicable standard of review. As we have stated, "in reviewing an administrative decision, a court is not to try the facts de novo or substitute its own judgment for that of the agency." *Equicor,* 758 N.E.2d at 37 (citation omitted). Indeed, when reviewing a claim that an administrative body's determination is arbitrary and capricious, we are bound by an administrative body's factual determinations unless the party challenging the decision demonstrates that the decision was "made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion." *City of Indianapolis,* 703 N.E.2d at 1091. Here, when the

trial court focused on what it considered to be shortfalls in ABC's evidence and found certain evidence "sufficient" or "insufficient" to establish the common construction wage, the court improperly reweighed the evidence and ultimately substituted its judgment for that of the Wage Committee. *See, e.g.,* Finding Nos. 7–9, *supra.*

■ Nevertheless, both Collignon and the Commissioner of the Indiana Department of Labor ("the Commissioner"), as amicus curiae, argue further that the trial court properly enjoined the Wage Committee's determination because the court found that "[t]he figures presented by [ABC through Gaylor] represented an average wage for various classifications of skilled, semi-skilled and unskilled labor." Specifically, Collignon and the Commissioner contend that in light of the court's determination that ABC's figures constituted average wages paid, not the most common wages paid, we must affirm the trial court as a matter of law. We cannot agree.

In *Union Township School Corp. v. State ex rel. Joyce,* 706 N.E.2d 183 (Ind.Ct. App.1998), *trans. denied,* we held that the legislature did not intend for wage committees to "average" when determining the common construction wage. *Id.* at 192. Instead, wage committees must determine the "scale of wages that are most commonly paid in the community." *Id.* Accordingly, in that case, where the wage committee received at least two sets of proposed wages and determined the common construction wage by averaging the wages, we affirmed the trial court's conclusion that the committee improperly "averaged" when it set the common construction wage. *Id.* at 191–92.

Here, unlike in *Union Township,* no party claims that the Wage Committee took the three proposed wage scales submitted by Cahill, Gaylor, and Overton and averaged those figures to arrive at the common construction wage. Rather, Collignon and the Commissioner assert that ABC's wages constituted an "average" of wages reported through its survey. But the only evidence to support that assertion is Goodness's testimony on cross-examination at the evidentiary hearing, where he stated that his understanding of the ABC figures was that the wages were an "average." Based on this single statement, the trial court found that ABC's proposed wages constituted average wages, not the wages most commonly paid.

The trial court's finding that ABC's wages were average wages was based on testimony, not a paper record. Consequently, our standard of review requires some degree of deference to the trial court on this matter. *See Equicor,* 758 N.E.2d at 37. Yet we cannot ignore the fact that the word "average" appears once, namely, when Goodness explained his understanding of ABC's proposed figures. Specifically, Goodness testified as follows:

Q: And isn't it correct [that] [Gaylor] never gave you one job in the entire county where any of the wages were paid that he offered?

A: He did it as an average.

However, there is no evidence in the record to support Goodness's opinion that ABC's wages were "average" wages. The word "average" appears nowhere in the transcript of the March 5 Wage Committee hearing. Indeed, the first page of the documents Gaylor distributed to the Wage Committee provides that "the wages below represent the *most commonly paid construction wages* in Dubois County at this time." (Emphasis added). And during Gaylor's oral presentation to the Wage Committee, he stated that ABC's proposed wages represent "what's commonly paid in the county...." Given that Gaylor did not

present any evidence to the Wage Committee that ABC's proposed wages represented "average" wages paid, we cannot discern how Goodness interpreted those proposed wages in that manner. We find it even more difficult to discern how the trial court, in light of the paper record before it, could enter a factual finding based on a single word used by Goodness to explain his interpretation of ABC's evidence, when he had no connection to or knowledge of the ABC survey other than the documents and oral presentation Gaylor submitted to the Wage Committee. Stated differently, Goodness's testimony may have explained the rationale for his vote, but there was no factual basis in the record to support his testimony.

Our review of the record as a whole leads us to conclude that the trial court erred when it found that ABC's proposed wages constituted "average" wages. Therefore, Collignon and the Commissioner's reliance on *Union Township* is misplaced. And contrary to the court's conclusion that the Wage Committee's determination was not rationally based, Gaylor presented substantial evidence to support the Wage Committee's decision. Thus, we conclude that the Wage Committee's determination was not arbitrary and capricious.[5]

## Issue Two: Statutory Duty to Investigate

The City and the Wage Committee, joined by the Associated Builders and Contractors, Indiana Chapter, Inc., ("ABCIC") as amicus curiae, further contend that the trial court erred as a matter of law when it concluded that the Wage Committee "failed to carry out its statutory responsibility of investigating the rate of wages that are currently being paid in Dubois County, Indiana." Specifically, the City, the Wage Committee, and ABCIC claim that the court erroneously relied on cases decided under the former prevailing wage law. They allege that the 1995 amendments to the prevailing wage law, which created the current version of the common construction wage statute, imposes no "duty to investigate" beyond a consideration of the evidence presented at the wage determination hearing. Thus, to the extent that the trial court relied on old case law to conclude that the Wage Committee should have conducted its own investigation of facts not presented, they contend that the trial court misapplied Indiana Code Section 5–16–7–1.

Courts are charged with the responsibility of statutory construction. *Union Township*, 706 N.E.2d at 190. Our primary objective when construing a statute

5. Throughout the evidentiary hearing and in his appellate brief, Collignon suggests that the three members of the Wage Committee who voted to adopt ABC's wages had an improper motive or bias against Overton's presentation of his proposed wages. The trial court discussed that alleged bias in its findings and found "a lack of attitude of cooperativeness" toward Overton during the March 5 hearing. However, the court ultimately concluded that Overton was not prevented from presenting evidence to the Wage Committee.

Our review of the record in its entirety reveals what may most accurately be described as tension between proponents of a union-based wage scale and a non-union-based wage scale. But such tension is not new in cases involving the determination of the common construction wage. *See Jones*, 457 N.E.2d at 589 (discussing other cases where dispute arises over wage committee's adoption of labor wage scales as prevailing wage). Nevertheless, in *Equicor*, 758 N.E.2d at 38, our supreme court held that our courts must not inquire into the subjective motivation of an administrative body's decision absent a bona fide claim of a violation of due process or equal protection. Collignon raises no such claim in this case. Therefore, we are precluded from examining the motives of the Wage Committee's determination.

is to determine and give effect to the intent of the legislature. *Id.* The interpretation of a statute is a question of law to which this court owes the trial court's determination no deference. *Id.* Accordingly, we apply a de novo standard of review to questions of statutory construction. *See id.*

■■■ As an initial matter, our review of the trial court's findings and conclusions as a whole reveal that the court believed the Wage Committee had failed to adequately sift through *the evidence presented* to determine which set of proposed wages most accurately represented the common wages paid in Dubois County. Stated differently, we do not read the trial court's findings and conclusions as imposing a duty on the Wage Committee to gather evidence beyond that presented to it. Nevertheless, we agree with the City, the Wage Committee, and ABCIC that the plain meaning of Indiana Code Section 5–16–7–1 *et seq.* does not impose upon a wage committee a duty to investigate facts other than those presented during the hearing.

As we explained in *Union Township,* 706 N.E.2d at 190, the common construction wage statute was first passed in 1935 as the "prevailing wage law." That former statutory scheme provided for a three-member wage committee to determine the prevailing rate of wages, which "shall not exceed the prevailing wage scales being at the time paid in such locality for such class of work." I.C. § 5–16–7–1(b), (d) (1994). Prior to 1995, the statute provided no definition of "prevailing wage," nor did it guide the wage committee as to what types of evidence it should consider in determining the prevailing wage. Additionally, under that former statute, this court

suggested that the wage committee must "investigate the pertinent facts before arriving at its decision." *Jones,* 457 N.E.2d at 589; *see also Committee for Prevailing Wage Scale v. Zeller,* 140 Ind.App. 478, 208 N.E.2d 697, 703, (1965) (stating in dicta, "there appears to have been no real investigation in the locality and conclusions based upon such investigation to support the majority report.").[6]

In 1995, however, the legislature passed two amendments, House Enrolled Act 1598 ("H.E.A. 1598") and, subsequently, House Enrolled Act 1435 ("H.E.A. 1435"). *Union Township,* 706 N.E.2d at 190, n. 6. H.E.A. 1435 represents the current version of the common construction wage statute and amended the former law in two significant ways relevant to this case. *See* Pub.L. No. 81–1995, Sec. 1 and Sec. 2. First, unlike the former prevailing wage law, the current statutory definition of "common construction wage" unambiguously provides that the committee shall determine the common construction wage after having considered: (1) reports from the department of workforce development, and (2) any other information submitted by any person to the committee. I.C. § 5–16–7–4. Additionally, H.E.A. 1435 added the following sentence to Indiana Code Section 5–16–7–1(c): "The committee is not required to consider information not presented to the committee at the meeting."

■■■ When construing statutes, we assume that the legislature is mindful of both court decisions and existing law. *Burke v. Town of Schererville,* 739 N.E.2d 1086, 1092 (Ind.Ct.App.2000), *trans. denied.* Moreover, "[a] fundamental rule of statutory construction is that an amendment

---

**6.** As ABCIC points out, in its conclusions that discuss the Wage Committee's alleged failure to investigate the common wage in the county, the trial court's language mirrors the language this court used in *Zeller,* 208 N.E.2d at 703, a case decided under the former statutory scheme.

changing a prior statute indicates a legislative intention that the meaning of the statute has changed." *United National Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind. 1999). Our review of the 1995 amendments indicates that the legislature, which we assume was cognizant of existing case law regarding a wage committee's duty to investigate the facts, intended to clarify the investigative role of wage committees. By adding provisions which define the evidence wage committees must consider, and by adding a provision that the committee "is not required to consider information not presented," the legislature made its intent clear that wage committees have no duty to investigate facts beyond those presented during the wage committee hearing.

## CONCLUSION

The Wage Committee's determination of the common construction wage for the five municipal projects was based on substantial evidence and, thus, was not arbitrary and capricious. To the extent that the trial court's conclusions imposed a duty on the Wage Committee to conduct an investigation of facts not presented, we reverse those conclusions as a matter of law. In sum, we reverse the trial court's judgment and remand with instructions for the court to affirm the Wage Committee's determination.

Reversed and remanded with instructions.

BROOK, C.J., and BAILEY, J., concur.