**CITY OF INDIANAPOLIS,**
Appellant–Defendant,

v.

**Paul WOODS, Appellee–Plaintiff.**

No. 49A02–9801–CV–74.

Court of Appeals of Indiana.

Dec. 23, 1998.

Andrew P. Seiwert, Office of Corporation Counsel, Indianapolis, for Appellant–Defendant.

Thomas D. Collignon, Roberge Galbraith & Collignon, Indianapolis, for Appellee–Plaintiff.

1. The City presents one additional issue: whether the trial court exceeded its jurisdiction in ordering Woods' reinstatement with back pay.

## OPINION

SULLIVAN, Judge.

Appellant, the City of Indianapolis (City), appeals the review court's order reversing the decision by the Indianapolis Civilian Police Merit Board (Merit Board) to terminate the employment of Appellee, Paul Woods (Woods) and ordering Woods' reinstatement as an officer with the Indianapolis Police Department (IPD).

We reverse and remand.

The City presents the following issues:

(1) Whether the trial court erred in permitting additional evidence to supplement the record of proceedings before the Merit Board; and

(2) Whether the trial court improperly reweighed the evidence considered by the Merit Board.[1]

Beginning in 1991, Woods served as a patrol officer for the IPD. On October 16, 1995, while on patrol, he was dispatched to a residence at 3201 North Nicholas Avenue pursuant to a report of vandalism. While en route to the residence, Woods contacted the complainant using his personal cellular phone and obtained a description of the suspects. Upon arriving in the area of the reported crime, Woods "marked 10–23," thereby notifying the IPD's communications center that he was at the scene and taking action. Because he observed no suspects in front of the complainant's residence, Woods proceeded to search for the suspects in "the projects," where the complainant indicated they might have fled. Woods, however, failed to make one-on-one physical contact with the complainant, who subsequently called the IPD to report that her cat had been killed and that no one had responded to her earlier call. Sergeant Brownie Coleman of the IPD responded to this second report, determined that Woods had been originally dispatched to the residence, and summoned Woods back to the residence. Afterwards, Woods filed an incident report concerning the matter.

However, we dispose of the instant case without considering the merits of this third issue.

Following Woods' failure to respond properly to the original vandalism "radio run," Sergeant Brownie suspended Woods for one day. IPD Deputy Chief Patricia Holman added two days to the suspension because of Woods' "failure to improve his conduct." Record at 351. Because of his extensive disciplinary record, on November 22, 1995, Woods was referred to psychologist Dr. Jeffrey Savitsky for a fitness for duty evaluation. The "evaluation assessed the quality of his emotional functioning and his ability to respond to the social and emotional demands made upon police officers." Record at 374. Dr. Savitsky found that, "from a mental health standpoint, Mr. Woods [was] fit for duty." Record at 377–78. However, he further noted the following:

"Mr. Woods attributes all of his past difficulties with the [IPD] to the unfairness, ignorance, and bias of department administrators. In essence, this man fails to internalize any blame and he does not accept a need for significant changes in his behavior or outlook. As a result, it is unlikely that Mr. Woods will make significant changes in his future behavior." Record at 377.

Dr. Savitsky noted that "punishment ... has little impact on [Woods] and is unlikely to deter [his] problem behavior." *Id.*

The IPD's Chief of Police, Donald E. Christ, reviewed Woods' suspension and, in a letter dated June 10, 1996, notified Woods of his indefinite suspension without pay, pending a termination hearing before the Merit Board. Chief Christ recommended Woods' discharge. While prompted by Woods' failure to properly respond to the dispatch on October 16, 1995, Chief Christ's recommendation also stemmed from Woods' lengthy disciplinary history. A chronological summary of Woods' disciplinary history accompanied the notification letter.

Woods' termination hearing was scheduled for July 17, 1996. On July 15, the Merit Board granted Woods' request for a continuance of the hearing. The hearing was rescheduled for October 16, 1996. Woods received notice of the new hearing date on September 10, 1996.

During his suspension, Woods performed security duties for Perry Township Schools and Blue Line Security. On August 26, 1996, Chief Christ notified Woods of additional charges against him. Specifically, Woods was cited for violating the IPD's rules against working off-duty without an Off–Duty Work Agreement and for working in law enforcement while on suspension.

The Merit Board conducted *de novo* evidentiary hearings on October 21, and November 6, 1996. Following deliberation in executive session, the Merit Board in open session unanimously voted to terminate Woods. On January 24, 1997, the Merit Board issued its Findings and Decision in the matter. Woods was found in violation of IPD policy by his failure to: (1) respond immediately and directly to all dispatched radio runs; (2) make an incident report when requested to do so by a citizen; (3) improve performance, conduct or attitude following disciplinary action; (4) maintain a record free of repeated violations of departmental rules; (5) perform duties in a manner which maintains satisfactory standards of efficiency in carrying out departmental objectives; (6) conform to established work standards according to his rank; (7) submit an Off–Duty Work Agreement for off-duty employment; and (8) follow departmental prohibitions against working in law enforcement while on suspension.[2] The Merit Board concluded, "that the recommendation for termination made by the Chief of Police is appropriate and should be upheld." Record at 41.

On February 21, 1997, Woods filed his Verified Petition for Judicial Review, alleging that the Merit Board's decision was arbitrary and capricious, as well as unconstitutional on various grounds. Subsequently, on August 14, 1997, Woods filed his Motion to Supplement the Record of Proceedings. The motion stated in part:

"2. Pursuant to I.C. § 4–21.5–5–12, the Court may receive evidence in addition to

---

**2.** The Merit Board also concluded that Woods did not violate Section IV, Subsection F, of the IPD rules, which reads as follows: "Members shall report for duty at the time and place required by assignment or orders, and shall be physically and mentally fit to perform their duties." Record at 37.

that contained in the agency's record for judicial review if it relates to the validity of the agency's actions at the time it was taken and is needed to decided a disputed issue, including unlawfulness of procedure or the decision-making process.

3. At the time of the hearing ..., [Woods] was not in possession of the disciplinary history of James H. Sparks. It was only after the completion of the hearing before the Merit Board that Officer Woods became aware of Officer Sparks' disciplinary history and it became evident to him that he was selectively prosecuted for his disciplinary history." Record at 42–43.

In his affidavit attached to this motion, Woods alleged:

"2. I believe that I was unjustly and selectively prosecuted by Chief of Police Donald Christ.

3. Other officers at the Indianapolis Police Department who are similarly situated to me have equal or greater disciplinary histories.

4. In particular, James H. Sparks, ... who was appointed on January 21, 1977, has twenty-seven (27) incidents of disciplinary conduct, including a 6–month suspension on December 14, 1987, through June 14, 1988...." Record at 45.

Woods further asserted that he was an African-American and that Officer Sparks was white. Exhibit A to Woods' affidavit, incorporated by reference into the affidavit, was a copy of an IPD file detailing the assignments of and disciplinary actions taken against Officer Sparks.

The City filed its Response in Opposition to Motion to Supplement the Record of Proceedings on August 18, 1997. Both parties filed briefs addressing the issues raised by Woods. On October 17, 1997, the trial court reversed the Merit Board's decision. In its order, the review court, without comment, granted Woods' request to supplement the administrative record. The review court further determined as follows:

"2. The record of proceedings before the Merit Board supports a finding that Paul Woods violated General Orders 16.07 [fail-

ure to respond directly to a dispatch] and 22.02 [failure to file an incident report] as a result of the October 16, 1995 incident. Officer Woods was disciplined as a result of the incident and in fact, received a three-day suspension for his violation of these departmental rules.

3. The subsequent review of the October 16, 1995 incident and the additional charges initiated by then Chief of Police Donald Christ in June of 1996 were, however, arbitrary and capricious in light of other officers in the department with similar disciplinary records. More importantly, the termination proceedings against Woods were not the result of some separate violation of departmental rules or regulations and were initiated after a period of over seven months during which Woods was working as a police officer with no record of having received any disciplinary action.

4. All subsequent actions taken by the Merit Board regarding Woods were tainted by this arbitrary and capricious initiation of termination procedures and should be **REVERSED**." Record at 80–81 (emphasis in original).

Having made these findings, the court ordered Woods' reinstatement as an IPD officer, with back pay from June 10, 1996, less any actual gross wages received by Woods from other sources during the period of his suspension.

The City filed a timely appeal of the review court's order.

■■■ Judicial review of administrative decisions is very limited. *City of Greenwood v. Dowler* (1986) Ind.App., 492 N.E.2d 1081, 1084, *reh'g denied.* Deference is to be given by the reviewing court to the expertise of the administrative body. *Id.* at 1085. Discretionary decisions of administrative bodies, including those of police merit commissions, are entitled to deference absent a showing that the decision was arbitrary and capricious, or an abuse of discretion, or otherwise not in accordance with law. Further, review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate

constitutional and statutory provisions. The reviewing court may not substitute its judgment for that of the administrative body or modify a penalty imposed by that body in a disciplinary action, without a showing that such action was arbitrary and capricious.

■■■ The challenging party has the burden of proving that an administrative action was arbitrary and capricious. *City of Greenwood, supra,* 492 N.E.2d at 1085. An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion. Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence is not to be reweighed by a reviewing court.

■ The Marion Superior Court initially reviewed the Merit Board's termination decision. We, in turn, review the trial court's decision which reversed the Merit Board. In order to properly adjudge whether the initial review was erroneous, we necessarily look through its decision to consider the validity of the Merit Board's determination.[3] In so doing, we use the same standard which was required to be applied in the initial review, as to those facts and conclusions addressed by the Merit Board.

■ In the instant case, our examination goes beyond simple consideration of the Merit Board's decision. The City argues that the trial court improperly allowed Woods to supplement the record of administrative proceedings with the disciplinary history of Officer Sparks. No statutory provision specifically governs the acceptance of newly discovered evidence by a court upon its review of a police merit board's decision to terminate an officer. However, appeals

from a police merit board decision "shall be made according to the Indiana rules of trial procedure." I.C. 36–8–3.5–18(b) (Burns Code Ed. Repl.1995). While no trial rule specifically addresses admission of newly discovered evidence in the context of judicial review, we may turn to the trial rules and general principles of trial procedure for guidance.

■■■ In the context of a review, the "decision whether additional testimony shall be taken is one which is normally committed to the sound discretion of the [reviewing] court." 2 Frank E. Cooper, *State Administrative Law* 626 (1965). Moreover, this court has previously observed in the context of general civil procedure, that the "granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court, whose decision will be disturbed only for a manifest abuse thereof." *Kelly v. Bunch* (1972) 153 Ind.App. 407, 287 N.E.2d 586, 589, *trans. denied.* Thus, we choose to apply an abuse of discretion standard to the court's decision admitting the newly discovered evidence of Officer Sparks' disciplinary record. It is important to note that this standard applies only to admission of the newly discovered evidence, not to those facts and conclusions addressed in the Merit Board's decision.[4]

We conclude that the trial court abused its discretion in admitting the disciplinary record of Officer Sparks. The evidence should not have been admitted, because Woods failed to show that he exercised due diligence in obtaining the "newly discovered" evidence. Due diligence is a fundamental element when dealing with newly discovered evidence. No statutory provision or evidentiary rule addresses the need to demonstrate due diligence in pursuing evidence at the administrative level. However, other provisions and

---

3. In this regard, our review is unlike the appellate review of an original trial court decision or judgment. In such instance it is the obligation of this tribunal to give deference to the discretionary prerogatives of the trial court. This is particularly so with respect to factual determinations. *Haseman v. Orman* (1997) Ind., 680 N.E.2d 531; *Kennedy v. Kennedy* (1997) Ind.App., 688 N.E.2d 1264, *trans. denied.*

4. If newly discovered evidence is properly admitted by the court reviewing an administrative decision, the court may issue findings and conclusions relating solely to the newly discovered evidence. A "clearly erroneous" standard applies to such findings and conclusions. *Ripley County Bd. of Zoning Appeals v. Rumpke of Ind., Inc.* (1996) Ind.App., 663 N.E.2d 198, 210, *trans. denied.*

rules dealing with newly discovered evidence indicate that due diligence is a prerequisite to the admission of such evidence.

For guidance, we first look to the AOPA,[5] which states that additional evidence may be received by the reviewing court "only if the additional evidence could not, by due diligence, have been discovered and raised in the administrative proceeding." I.C. 4–21.5–5–12 (Burns Code Ed. Repl.1996). Under T.R. 59(A)(1), in a motion to correct error, a party moving for a new trial based on newly discovered evidence must show that such evidence, "with reasonable diligence, could not have been discovered and produced at trial." In *Elkhart Community Schools v. Yoder* (1998) Ind.App., 696 N.E.2d 409, 415 (citations omitted), we recently noted:

> "When a new trial is sought based on newly-discovered evidence, the appellant must show, among other things, that the evidence could not have been discovered before the trial by the exercise of due diligence. A bare assertion that reasonable diligence has been used is insufficient to show due diligence; the appellant must set out facts showing due diligence has been exercised."

Moreover, in the context of a claim for post-conviction relief based upon newly discovered evidence, we require a petitioner to demonstrate that he exercised due diligence in attempting to discover the evidence in time for trial. *Tyson v. State* (1993) Ind.App., 626 N.E.2d 482, 484 (Sullivan, J., concurring), *cert. denied,* 510 U.S. 1176, 114 S.Ct. 1216, 127 L.Ed.2d 562.

Because the element of due diligence is essential to whether newly discovered evidence is admissible in other contexts, we choose to require it within the context of proceedings before the Merit Board and upon judicial review as well. We conclude that Woods failed to demonstrate that he exercised due diligence in pursuing the disciplinary records of Officer Sparks or any other IPD officers. In his motion to supplement the record, Woods merely asserted that he "was not in possession" of Officer Sparks' disciplinary history at the time of his hearing before the Merit Board. Record at 42. Woods did not elaborate with respect to any prior attempts to obtain any officer's disciplinary history at the administrative level. He fails to mention whether he even made requests for the disciplinary records of similarly situated officers. Woods' own self-serving, bare assertion of non-possession of the disciplinary record is markedly insufficient to support his request to supplement the agency record with newly discovered evidence. Further, review of the record indicates that Woods cannot demonstrate that he exercised due diligence in his search for Officer Sparks' record or any other disciplinary records.[6]

---

5. Although in his Motion to Supplement the Record, Woods alluded to I.C. 4–21.5–5–12 as authority for admitting the "newly discovered" evidence, the parties upon appeal agree that the AOPA is not applicable to the police merit board proceedings because the board is a political subdivision and is therefore not an "agency" within the contemplation of the Act. *Stewart v. Fort Wayne Community Sch.* (1990) Ind., 564 N.E.2d 274, *reh'g denied, cert. denied,* 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 133; *Tippecanoe Valley Sch. Corp. v. Leachman* (1970) 147 Ind.App. 443, 261 N.E.2d 880, *trans. denied.* However, the fact that the AOPA does not control in such proceedings does not mean that, in the absence of other governing procedures established by statute, rule or regulation, we are mandated to ignore the procedural guidance that may be provided by those provisions. *See State ex rel. Newton v. Board of Sch. Trustees* (1980) Ind.App., 404 N.E.2d 47 (notwithstanding inapplicability of the Administrative Adjudication Act, school board required to make written findings) *appeal after remand,* (1984) Ind.

App., 460 N.E.2d 533, *trans. denied; Amburgey v. Miller* (1977) 173 Ind.App. 116, 362 N.E.2d 869 (notwithstanding inapplicability of AAA and the absence of a statute governing appeals from administrative licensing determination, failure to exhaust administrative remedies may be considered with regard to claimant's right to relief).

6. In his testimony before the Merit Board, Woods indicated that he was "somewhat suspicious" concerning the actions by a white police officer, Paul Buckman, in ordering a group of black motorcyclists, which included Mr. Woods, to leave the parking lot of a White Castle restaurant in 1990. Record at 522. Woods, who was in the police academy at the time, was ultimately disciplined with a one-day suspension because of the incident; he felt the action was racially motivated. In November of 1995, during his psychological examination by Dr. Savitsky, Woods stated that he *perceived* discrimination or bias against him. Further, in his petition for judicial review, filed February 21, 1997, Woods alleged that his equal protection rights were violated

Therefore, we conclude that the trial court abused its discretion in admitting the alleged newly discovered evidence. Its reversal of the Merit Board, based upon the newly discovered evidence, is therefore invalid.

■ Substantial evidence in the record supports the Merit Board's termination of Woods. Woods' failures to respond immediately and directly to the dispatch on October 16, 1995, and to make a timely incident report on that evening are well documented by Sergeant Coleman's testimony. Sergeant Coleman and another officer responded to Woods' missed dispatch. According to Sergeant Coleman, "The bottom line is that [Woods] did not respond to that address and talk to the [complainant] in person, one on one." Record at 322. Furthermore, Sergeant Coleman testified that Woods failed to make an incident report concerning the dispatch, that Woods did not feel an incident report was necessary, and that he asked Woods to fill out a report.

Woods' disciplinary history is quite lengthy, and the record supports the Merit Board's conclusion that Woods failed to improve his conduct and performance and that he failed to maintain a record free of repeated violations of departmental rules. His troubles began during his academy training days in 1990, when he was disciplined for unsatisfactory conduct both on and off duty. Subsequently, the record indicates that Woods was suspended on the following occasions for violations of departmental rules: two days in 1991, thirty-one days in 1992, three months in 1993, and five days in 1995. In addition, Woods was issued a counseling form in November of 1994 for calling in sick when he was not ill, and, on another occasion, he received a written reprimand for driving his IPD vehicle on a flat tire. According to Dr. Savitsky, it was unlikely that Woods would make significant changes in future behavior.

Following his suspension by the Chief of Police in June of 1996, Woods admits that he worked for a security firm and a school corporation as a security guard. Woods had not requested off-duty work permits for these assignments, per IPD policy.

Evidence of Record is adequate to support the reasonable conclusion that Woods violated each departmental rule cited by the Merit Board in its decision terminating Woods' employment as an IPD officer. The Merit Board's decision is logically supported by the evidence and is therefore not arbitrary and capricious.

Having eliminated consideration of Officer Sparks' disciplinary history, having determined from the record that Woods may not successfully claim due diligence, and having concluded that the Merit Board's determination was not arbitrary and capricious, we hereby order this matter remanded to the trial court with instructions to affirm the Merit Board's termination decision in all respects.

SHARPNACK, C.J., and HOFFMAN, Senior Judge, concur.

---

because he was terminated while "white officers, known by the Chief of Police and the Board to have more disciplinary actions against them, went unsanctioned for their prior misconduct." Record at 9. Thus, Woods suspected discrimination and bias well before filing his motion to supplement the Record in August of 1997. He had ample time to pursue IPD records relevant to his claim. A review of the Record thus indicates that, even if it had made a finding as to due diligence, the review court could not reasonably have concluded that Woods—who suspected bias or discrimination against him by the IPD as far back as 1990—exercised due diligence in pursuing disciplinary records allegedly indicative of racial discrimination by the IPD.