

**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED
Oct 17 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANGELA JOSEPH**
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANCES ASHTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-MI-815 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-0406-MI-2244

**October 17, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Frances Ashton (Ashton), appeals the trial court's judgment affirming the decision of the Merit Board of the Indianapolis Police Department (Merit Board) to terminate her employment as a police officer.

We affirm.

## ISSUES

Ashton raises one issue for review, which we restate as the following two issues:

(1) Whether the Merit Board's failure to follow its procedures renders its disciplinary action void; and

(2) Whether the Merit Board's decision was based on substantial evidence or was arbitrary and capricious.

## FACTS AND PROCEDURAL HISTORY

On October 8, 1990, Ashton joined the Indianapolis Police Department (IPD) as a patrol officer and was later promoted to the rank of sergeant in 1997. On April 28, 2002, a fight broke out at one of the bars located on the fourth floor of the Circle Centre Mall in Indianapolis. IPD Officer Chris Faulds (Officer Faulds) responded along with other police officers. One participant in the fight, Jason Parker (Parker), struck Officer Faulds with his elbow and then attempted to flee. Officer Faulds tackled Parker, but Parker dragged him on the ground and caused injuries to Officer Faulds' knees and elbows. Other officers subdued Parker, who was later arrested for battery upon a police officer and resisting arrest. Officer Faulds called for a supervisor to have his injuries documented and medics were

2

called to examine injuries sustained by Parker. Ashton, who was on duty that night, was called as Officer Faulds' supervisor.

Ashton arrived at the mall and reviewed the incident with Officer Faulds. An evidence technician was requested but no one was available. Ashton suggested that a Polaroid camera kept at the mall be used to document Officer Faulds' injuries. Officer Faulds believed two photos were taken of his injuries. In addition, mall security personnel informed the Officers that they had a video tape recording of the initial fight between Parker and others, which showed Parker being hit by others. However, the recording did not depict Parker injuring Officer Faulds. A copy of the video tape recording was provided to the Officers.

"[S]pecifically by her order," Ashton told Officer Faulds that she would "take charge" of the both the Polaroid photos and the videotape and would turn them in. (Supplemental App. p. 104). Officer Faulds saw Ashton walk out of the room "with both the Polaroids and the videotape." (Supp. App. p. 113). An incident report was later completed which recorded that "Sergeant Ashton […] took charge of the videotape. Sergeant Ashton also then proceeded to take several Polaroids of damage done to [Officer Faulds] due to the fact that there was no evidence tech available and she also took the photos with her with the attempt to have an ET submitted to the property room." (Supp. App. p. 762).

In July 2002, Ashton was demoted to patrol officer as a result of different conduct. On July 10, 2002, at the request of Deputy Prosecutor Lauren Wheatley (Prosecutor

3

Wheatley) of the Marion County Prosecutor's Office, Shanna Hull (Hull), a paralegal, paged Ashton to request the Polaroid photos and videotape for use in the State's case against Parker. On July 17, 2002, Hull paged Ashton again and also sent an email requesting the items. By August 2002, Hull had stopped "trying to get anything on it." (Supp. App. p. 138). However, by February 2003, Hull learned that the matter had not been resolved and contacted Ashton.

On May 22, 2003, Ashton sent an email to Prosecutor Wheatley stating that "I do not have any video tape, that [O]fficer [F]aulds was mistaken when he wrote in the report that I took the tape as evidence." (Supp. App. p. 769). In addition to offering advice on how to try the State's case against Parker, Ashton wrote that the videotape "had no evidentiary value." (Supp. App. p. 769). On May 28, 2003, Ashton called Hull and left a voicemail message reporting her further efforts to find the videotape and admitting that "I'm trying to figure out if I took custody of it where it's at now," and that "I'm not God so I can't miraculously make this thing appear when and where I want it to." (Supp. App. p. 768). Ashton also said, "If you need to dismiss the Parker case then by all means please do that okay." (Supp. App. p. 768). Hull forwarded the message to Prosecutor Wheatley.

Thereafter, Hull ate lunch with Kim Manifold (Manifold), a friend of hers who worked as civilian employee in IPD's photo unit. Hull shared her "frustrations with her job" with Manifold, who, on her own accord, contacted IPD's Internal Affairs Division (Internal Affairs). (Supp. App. p. 146). Manifold later informed Hull that Sergeant John Hoenstine (Sergeant Hoenstine) with Internal Affairs wanted her to contact him. Sergeant

4

Hoenstine eventually met with Hull and Prosecutor Wheatley and learned that, "[t]hey just wanted their evidence that they needed, they felt they needed to proceed in the case." (Supp. App. p. 211). Sergeant Hoenstine contacted Ashton's supervisor to informally resolve the issue, but Ashton denied having "the evidence." (Supp. App. p. 212). Once it was apparent that the matter could not be informally resolved, Sergeant Hoenstine's supervisor ordered a formal investigation.

On June 2, 2003, Sergeant Hoenstine paged Ashton sometime after 11 a.m. and requested her to call him. Ashton did not respond and the following day, June 3, 2003, Sergeant Hoenstine paged her again around 8:30 a.m. When Ashton did not respond to a third page sent approximately one hour later, Sergeant Hoenstine contacted Sergeant Rhonda Reynolds (Sergeant Reynolds), Ashton's supervisor, to inform her that Ashton had been commanded to appear at Internal Affairs immediately.

At 10:17 a.m., Ashton and Sergeant Reynolds arrived at Internal Affairs together. Sergeant Hoenstine and Sergeant Pauli Irwin (Sergeant Irwin) met with them. The meeting was recorded with the knowledge of all parties. Ashton requested that a representative from the Fraternal Order of Police (FOP) attend the meeting because she believed that it was an interview which would result in discipline. Sergeant Hoenstine stated that he did not believe that a union representative was needed for the interview, yet asked her to sign a statement of rights form, in which Ashton acknowledged that her refusal "to testify, or to answer questions relating to the performance of [her] official duty or fitness for duty" may subject her to dismissal from the IPD. (Supp. App. p. 831). Ashton agreed to proceed.

5

Sergeant Hoenstine told Ashton, "I'm only going to be asking you questions as I told you about the pages that you were sent?[.]" (Supp. App. p. 815). Ashton explained that she had the day off on June 2, 2003, and when she saw the page later that day, she believed that Internal Affairs was closed. Regarding June 3, 2003, Ashton explained that she received several pages that morning and believed that Sergeant Hoenstine had paged only once rather than twice that day. Ashton explained that she waited for a supervisor to overhear her phone call because she mistrusted the phone service at the police station. At the conclusion of the interview, Sergeant Hoenstine said,

> I don't have anything further on this, I do have to ask you[,] I need a [sic] bring you in and talk to you on an unrelated matter […] having to do with a missing videotape and some missing pictures from a run that you were on. I know you talked to the prosecutor's office about it. Need to get you in and talk to you about that. What would be a good time to do that?

(Supp. App. p. 818). Ashton replied that she would check her calendar. Following the meeting, Sergeant Hoenstine discussed the matter with his supervisors and concluded that Ashton had disobeyed a direct order and decided to issue her a one-day suspension.

On June 6, 2003, Ashton, this time accompanied by an FOP representative, met with Sergeant Hoenstine regarding the missing photographs and videotape. When asked whether she took custody of photographs depicting Officer Faulds' injuries, Ashton replied, "I probably did." (Supp. App. p. 802). When asked whether she took a videotape depicting the incident at the Mall, Ashton replied, "Yeah I must have taken it" and admitted finding the videotape while cleaning her home. (Supp. App. p. 804). Ashton further

6

explained that she believed that the videotape "didn't show anything" and was therefore without evidentiary value. (Supp. App. p. 804).

On June 24, 2003, Ashton came to Internal Affairs to pick up a copy of the June 3, 2003 interview transcript. Sergeant Hoenstine and Sergeant Irwin met Ashton in their office. After entering, Ashton requested that the door be left open and left her radio on to summon a supervisor. Sergeant Hoenstine ordered Ashton to sit down and turn off her radio. Ashton refused to turn off the radio as she believed that she was entitled to have a union representative present. Sergeant Hoenstine and Ashton exchanged words, with Ashton telling him that "You lie about me. Give me discipline." (Supp. App. p. 773).

Sergeant Hoenstine told Ashton that he was giving her a one-day suspension "for failure to answer your pager" and gave her a disciplinary action notice to sign, which stated that Ashton was being suspended for violating IPD's pager policy. (Supp. App. p. 774). Throughout the meeting, Ashton argued with Sergeant Hoenstine and at one point told him, "You are named personally in my next lawsuit." (Supp. App. p. 774). Ashton signed the disciplinary action notice and requested a hearing before the IPD Board of Captains.

On June 30, 2003, Sergeant Hoenstine issued Ashton a second one-day suspension based on her conduct during the June 24, 2003 meeting. The disciplinary action notice stated that Ashton was being suspended for violating IPD rules, accumulating multiple violations, and insubordination. In particular, Sergeant Hoenstine cited Ashton's refusal to sit down, to turn off her radio, as well as her "loud, sarcastic, and insubordinate" behavior

7

during the meeting. (Supp. App. p. 823). Ashton, again, signed the disciplinary action notice and requested a hearing before the Board of Captains.

On July 2, 2003, Deputy Chief Darryl Pierce (Deputy Chief Pierce) sent an inter-department communication to Jerry Barker, the then IPD Chief of Police (Chief Barker), stating that he could not support retention of Ashton in the IPD. He cited her June 24, 2003 incident with Sergeant Hoenstine among other incidents. Despite reviewing Ashton's version of events, Deputy Chief Pierce concluded that "Ashton was insubordinate because she clearly ignored directives that Sergeant Hoenstine gave to her. That type of conduct can not [sic] be tolerated." (Supp. App. p. 780).

On August 15, 2003, Chief Barker issued a notice of discharge recommendation and order, recommending Ashton's termination for IPD rules violations and her indefinite suspension, pending review by the Merit Board. Specifically, Chief Barker alleged that Ashton violated the following IPD General Orders: General Order 16.01, Section VIII, subsections A (requiring officers to carry pagers at all times) and B (obligation to respond to pages from the department within a reasonable time); General Order 18.13, Section II, Subsection G (completion of officer assault forms); and General Order 23.01, Section IV, subsection A (evidence collection). Chief Barker further based his termination recommendation on Ashton's violation of IPD Rules and Regulations consisting of the following: Section II, subsection A (conduct detrimental to the efficient operation of the IPD); Section II, subsection B (failure to improve performance); Section II, subsection C

8

(repeat violations); Section III, subsection A (insubordination) and subsection C (obedience of lawful order); and Section IV (neglect of duty).

Ashton filed a motion to dismiss the disciplinary proceedings. In particular, Ashton alleged that her June 3, 2003 meeting with Sergeant Hoenstine was an Internal Affairs interrogation, entitling her to union representation under Section 4J of the Bill of Rights. Ashton claimed that Sergeant Hoenstine's refusal to permit her to have a union representative present violated that section. Citing Revised Code Sections 251-131 and 251-135 and IPD General Order 3.00, Ashton also asserted that the Internal Affairs investigation should have been referred to the Citizens Police Complaint Office because it arose from Prosecutor Wheatley's need for the videotape and photographs regarding Parker. Finally, Ashton alleged that pursuant to Revised Code Section 253-208(g) and Section III, subsection B of the IPD Rules and Regulations, she was deprived of a hearing before the Board of Captains regarding the two one-day suspensions issued by Sergeant Hoenstine.

On November 19 and 24, 2003, the Merit Board held hearings on Chief Barker's termination recommendation. Ashton renewed her motion to dismiss, which the Merit Board denied. Chief Barker however dismissed the allegation that Ashton violated General Order 18.13, Section II, subsection G since an officer assault form had been completed regarding Officer Faulds. At the conclusion of the hearings, the Merit Board upheld Chief Barker's recommendation that Ashton be discharged.

On May 20, 2004, the Merit Board provided its written findings. Regarding General Order 16.01, Section VIII, the Merit Board concluded that Ashton had not violated Subsection A because she had her pager with on June 2, 2003, but she violated Subsection B by failing to respond to Sergeant Hoenstine's pages within a reasonable time. Ashton also violated General Order 23.01, Section IV, Subsection A by failing "to properly handle photographic evidence" and the Merit Board concluded that the same grounds supported its further determination that Ashton neglected her duty in violation of Section IV of the IPD Rules and Regulations. (Appellant's App. p. 27). "[T]hrough her actions with respect to the photographic evidence, and in her interactions with the Marion County Prosecutor's office and [Internal Affairs]," Ashton "conducted herself in a manner detrimental to the efficient operation and discipline of the [IPD]" and therefore violated Section II, subsection A of the IPD Rules and Regulations. (Appellant's App. p. 27). The Merit Board concluded that Ashton's behavior toward Sergeant Hoenstine constituted insubordination in violation of Section III, subsections A and C of the IPD Rules and Regulations. Finally, based on her prior conduct and history of repeat violations, it concluded that Ashton violated Section II, subsections B and C.

On June 18, 2004, Ashton filed her verified petition for judicial review, naming the Consolidated City of Indianapolis (City) as respondent. On February 1, 2007, the trial court issued a default judgment but set it aside on February 19, 2009. On January 7, 2012, the City filed a motion to dismiss under Ind. Trial 41(E), which the trial court denied.

10

On June 20, 2012, the trial court held a hearing on the petition. On September 6, 2012, the trial court issued its findings of fact, conclusions of law and judgment, affirming and reversing the Merit Board in part, but ultimately upholding Ashton's termination. First, the trial court found that the June 3, 2003 meeting was an interrogation under Section 4 of the Bill of Rights and therefore Sergeant Hoenstine improperly denied Ashton union representation in violation of Section 4J. As a result, the trial court determined that the Merit Board committed legal error in "admitting evidence resulting from [the] interrogation" and "denying the Motion to Dismiss as to those charges based in whole or part on the evidence elicited from the June 3, 2003 interrogation." (Appellant's App. p. 89). Further, the trial court concluded that the disciplinary suspensions arising from the June 3 and June 24, 2003 meetings should have been referred to the Board of Captains.

The trial court, however, rejected Ashton's Motion to Dismiss for failure to refer the matter to the Citizens Police Complaint Board and failure to refer Chief Barker's charges against Ashton to the Board of Captains. In particular, the trial court concluded that a citizen for purposes of Revised Code Section 251-131 did not include those who allege "that a police officer has impeded her performance of official governmental duties." (Appellant's App. p. 88). The trial court further concluded that charges brought directly by the Chief need not be referred to the Board of Captains. Finally, the trial court found substantial evidence in support of the remaining four violations: evidence mishandling, neglect of duty, insubordination, and conduct detrimental to the efficient operation of the IPD. Finding that these violations constituted good cause for Ashton's termination, the

trial court concluded that the Merit Board's determination was neither arbitrary nor capricious and upheld Ashton's termination.

Ashton now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

The parties agree that the Merit Board's decision is an administrative decision. Judicial review of administrative decisions is very limited. *City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1090 (Ind. Ct. App. 1998), *trans. denied*. When reviewing the decision of an administrative agency, this court stands in the same position as the trial court. *Whirlpool Corp. v. Vanderburgh Cnty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007), *trans. denied*. We may grant relief only upon finding that the agency's action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Id.*

The challenging party has the burden of proving that an administrative action was arbitrary and capricious. *Woods*, 703 N.E.2d at 1091. An arbitrary and capricious decision is one which is patently unreasonable. *Id.* It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion. *Id.* Substantial evidence is that relevant evidence which a

12

reasonable mind might accept as adequate to support a conclusion. *Id*. The evidence is not to be reweighed by a reviewing court. *Id*.

The trial court proceeding is not intended to be a trial *de novo*, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Whirlpool*, 875 N.E.2d at 759. We, in turn, review the trial court's decision. In order to properly adjudge whether the initial review was erroneous, we necessarily look through its decision to consider the validity of the Merit Board's determination. *Woods*, 703 N.E.2d at 1091. In so doing, we use the same standard which was required to be applied in the initial review, as to those facts and conclusions addressed by the Merit Board. *Id*. Finally, "the discipline of police officers is within the province of the government's executive, rather than judicial, branch." *Sullivan v. City of Evansville*, 728 N.E.2d 182, 187 (Ind. Ct. App. 2000). "For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Id*.

## II. *Proper Procedures*

Ashton argues that the decision of the Merit Board is void because it failed to comply with its own procedures. She relies on three circumstances to support her claims: (1) Sergeant Hoenstine improperly denied her union representation at the June 3, 2003 meeting; (2) the single-day suspensions issued by Sergeant Hoenstine required review by the Board of Captains; and (3) disciplinary violations stemming from Ashton's conduct regarding the Parker case should have been forwarded to the Citizens Police Complaint

13

Board. The trial court concluded that the Merit Board should have granted Ashton's motion to dismiss regarding union representation and referral to the Board of Captains and accordingly overturned the Merit Board's decision of Ashton's violation of pager policy, insubordination, and repeat violations.

In *Grisell v. City of Indianapolis*, 425 N.E.2d 247, 250 (Ind. Ct. App. 1981), Grisell, a police officer, alleged a violation of the Police Officer's Bill of Rights, part of which provided for a police officer to receive union representation during internal interrogations that lead to disciplinary action or dismissal. Grisell argued that he was entitled to have – but did not receive – union representation at a Board of Captains hearing thereby rendering his dismissal void since "[i]t is well established that an administrative agency may not disregard its own regulations in derogation of statutory and constitutional rights." *Id.* at 255. This court disagreed, concluding that "[a]ny deficiencies or errors occurring at any preliminary stage, the Board of Captains hearing, or the [police c]hief's actions, are material to the review only to the extent such deficiencies or errors were carried forward into the Merit Board proceedings and prevent" the officer "from having a fair, *de novo* hearing there." *Id.* at 256. Because Grisell "was accorded before the Merit Board a full *de novo* hearing," this court ultimately declined to declare to Merit Board proceedings void. *Id.* at 253.

The burden of demonstrating the invalidity of an agency action is on the party asserting the invalidity. *Regester v. Indiana State Bd. of Nursing*, 703 N.E.2d 147, 149 (Ind. 1998). Ashton has not met her burden. Because the Merit Board affirmed Ashton's

14

violations of IPD pager policy, failure to improve performance, and repeated violations – all of which were connected to the June 3, 2003 meeting and one-day suspensions – the trial court overturned them. However, four of the violations did not and therefore cannot be said to have "carried over to the Merit Board proceedings." *Grisell*, 425 N.E.2d at 255. Moreover, Ashton does not challenge the manner in which the Merit Board hearing was conducted. We therefore reject Ashton's argument.

Ashton's second claim that the Merit Board proceedings are void involves Sergeant Hoenstine's failure to refer Ashton's two single-day suspensions to the Board of Captains. In considering this claim, the trial court cited City-County General Ordinance No. 2, § 253-208, which provided:

> All disciplinary actions taken by anyone except the chief of police shall be forwarded in writing to the disciplinary board of captains through the chain of command within three (3) working days of the action. The disciplinary board of captains shall ensure due process and consistency of discipline throughout the department. The disciplinary board may conduct an administrative review of the matter, request further investigation by internal affairs or other appropriate personnel, or hold a hearing on the matter.

(Appellant's App. p. 89).

Similar to her claim regarding union representation, we conclude that Ashton's challenge fails. The Board of Captains proceeding is a preliminary proceeding, prior to a *de novo* hearing before the Merit Board. *Grisell*, 425 N.E.2d at 255. However, Ashton has not alleged how the lack of this procedure "prejudiced [her] subsequent, *de novo* administrative hearing." *Meeks v. Shettle*, 514 N.E.2d 1272, 1276 (Ind. Ct. App. 1987), *trans. denied*. We conclude that Sergeant Hoenstine's failure to refer Ashton's two single-

day suspensions to the Board of Captains did not render proceedings before the Merit Board void.

Finally, we consider Ashton's claim that any complaints from Prosecutor Wheatley should have been referred to the Citizens Police Complaint Board. By ordinance, the Citizens Police Complaint Board may receive:

> [a]ny complaint of a citizen against a police officer alleging that the officer used profane and abusive language or intentionally destroyed or damaged real or personal property, exceeded his/her authority as a police officer, used unauthorized force, or acted in violation [IPD] rules and regulation or orders.
>
> […]
>
> Any individual personally aggrieved by the act(s) complained of may file a complaint.

City-County General Ordinance No. 2, § 251-131 (2000). Ashton argues that by not first referring Prosecutor Wheatley's complaints to the Citizen's Police Complaint Board, the Merit Board failed to follow its rules, thereby rendering the proceedings against Ashton void. However, the trial court construed the ordinance to not include "a complainant who alleges that a police officer has impeded her performance of official or governmental duties" and rejected Ashton's argument. (Appellant's App. p. 88). We reach a similar result.

First, Ashton does not argue that the Citizens Police Complaint Board is a final hearing that would preclude *de novo* review by the Merit Board. Second, the record reveals that the impetus for Ashton's Internal Affairs investigation came from an IPD employee in its photo unit, rather than Prosecutor Wheatley or Hull. Thus, the failure to refer Ashton

16

to the Citizen Police Complaint Board did not render the Merit Board's findings void. In sum, we conclude that Ashton has not met her burden of demonstrating the invalidity of the Merit Board proceedings.

### III. *Substantial Evidence*

Ashton next argues that the Merit Board's decision was not supported by substantial evidence and was arbitrary and capricious. As noted previously, the trial court upheld the Merit Board's Order on four grounds: mishandling evidence, neglect of duty, insubordination, and conduct detrimental to the efficient operation of the IPD.

With respect to mishandling evidence, we note that IPD General Order 23.01 provided that "all photographs taken either by Polaroid or conventional camera must be logged and deposited in the Photo Unit drop box the same day the photographs are taken." (Appellant's App. p. 20). Further, while police officers "who come into possession, custody, or control of any lost, stolen, or abandoned property shall secure and transport it to the Property Branch in conformity with law and department policy," those who do not have neglected their duty. (Appellant's App. p. 21).

The trial court concluded that Ashton "took control of Polaroid photographs depicting the physical condition [Officer] Fauld[s] immediately after the assault and a videotape recorded by the [mall] trained on the site of the assault." (Appellant's App. p. 84). Officer Faulds stated in a probable cause report and testified at the Merit Board hearing that Polaroid photos of his injuries were taken, that a videotape existed, and that Ashton took control of both. In emails to the prosecutor's office, Ashton never mentioned

17

the Polaroid photographs, denied knowing where the videotape was, and gave advice on how the State should try its case against Parker without the missing evidence. During her Internal Affairs interview on June 6, 2003, Ashton admitted that she found the videotape while cleaning her home and recalled a mall "security officer snapping a couple Polaroid pictures of [Officer] Faulds['] knee. (Suppl. App. p. 803). Accordingly, we conclude that substantial evidence established that Ashton mishandled the evidence and neglected her duty.

Furthermore, we reject Ashton's assertion that some evidence in support of these violations resulted from the June 3, 2003 meeting with Sergeant Hoenstine. The record shows that Sergeant Hoenstine mentioned the evidence from the Parker case only to arrange a subsequent interview with Ashton. That interview occurred on June 6, 2003, at which Ashton was accompanied by a FOP representative. Although Ashton argues that mishandling evidence had nothing to do with her fitness as a police officer, that her behavior is excused by the lack of an evidence technician at the scene, and that the evidentiary value of the photographs and the videotape was *de minimis*, this is a request to reweigh the evidence, which neither the trial court nor this court are permitted to do. *Woods*, 703 N.E.2d at 1091. We conclude that the Merit Board's findings concerning Ashton's conduct with the photographic and videotape evidence were supported by substantial evidence and are not arbitrary or capricious.

Challenging the trial court's determination regarding insubordination, Ashton makes two arguments. First, she contends that the acts of insubordination stemmed from

18

the June 3, 2003 meeting, which the trial court found improper and ascribed legal error to the Merit Board's admission of evidence from the meeting. Second, Ashton contends that the June 24, 2003 meeting was "as much as an interrogation as the June 3 incident" and therefore Ashton's conduct at that meeting could not amount to insubordination. (Appellant's Br. p. 27).

The Merit Board's findings of insubordination came from two provisions of the IPD Rules and Regulations, which it cited as:

Section III – Insubordination

A.   Members shall not be insubordinate or act with disrespect to any supervisor or appointed police administrator.

   […]

C.   Members shall properly obey any lawful order of a supervisor or appointed police administrator.

(Appellant's App. p. 21). The Merit Board found that "Ashton's conduct, including both her actions and words, when she refused to obey the reasonable orders of Sergeant Hoenstine and demonstrated insubordination and a lack of respect." (Appellant's App. p. 26).

Although Ashton relies on the trial court's finding of impropriety of the June 3, 2003 interrogation, there is substantial evidence in support of the trial court's determination that Ashton violated IPD Rules and Regulations on insubordination at the June 24, 2003 meeting. The trial court concluded that the June 24, 2003 meeting was not an interrogation under the Police Officer's Bill of Rights. It is clear from the record that Ashton was

19

requested to come to Internal Affairs on June 24, 2003 to pick up and sign a transcript of her June 3, 2003 interview and receive a one-day suspension. Sergeant Hoenstine posed no inquisitorial questions to Ashton at this meeting and Ashton was not required to sign a statement of rights form. Thus, Ashton was not entitled to union representation under the Bill of Rights. During the meeting, Ashton disobeyed a direct order to sit down, refused to turn off her radio, and told Sergeant Hoenstine that "You are named personally in my next lawsuit." (Supplemental App. p. 775). This is substantial evidence establishing Ashton's insubordination.

Finally, Ashton argues that Chief Barker's "subjective assertions" did not relate to her fitness for duty and therefore did not constitute evidence that Ashton's conduct was detrimental to the efficient operation and or general discipline of the IPD. Chief Barker testified at the Merit Board hearing that Ashton "has just had my entire police department in an uproar. Everywhere she goes she causes confusion and uproar. Threatening everybody she comes in contact with she is go [to] sue them, myself included. It's detrimental to a [well-run] organization." (Supp. App. pp. 358-59).

In determining that Ashton engaged in conduct detrimental to the efficient operation of the IPD, the Merit Board found that:

> Ashton's conduct throughout these incidents include her failure to safeguard photographic evidence of a crime, her failure to cooperate in attempts to locate this evidence and to investigate its disappearance, and her contentious personal interactions with the Marion County Prosecutor's Office and [Internal affairs], was detrimental to the efficient operation and general discipline of the [IPD]. Furthermore, her actions were disruptive and required the unnecessary expenditure of the time and resources of these offices.

20

(Appellant's App. p. 25). The trial court concluded that the Merit Board's findings were supported by substantial evidence.

Ashton argues that although Chief Barker made his decision to terminate Ashton based on the "totality of circumstances," "some of those circumstances included matters not specifically charged, for which Ashton was found not guilty, or that the trial court found the procedure deficient such that they were unlawful and void." (Appellant's Br. p. 29). Ashton's argument is tantamount to a request to reweigh the evidence, which we will not do. *Woods*, 703 N.E.2d at 1091. Instead, the record reveals that there is substantial evidence that Ashton's conduct was detrimental to the IPD. Ashton mishandled evidence involved in the Parker case, then spent months arguing with the Marion County Prosecutor's office over the existence of the evidence, part of which she later found in her home. When paged by Internal Affairs, Ashton did not return any pages and had to be sent for by her supervisor. On June 24, 2003, Ashton was called to Internal Affairs solely to pick up a transcript and notice of discipline, yet engaged in conduct that was disruptive, combative, and insubordinate. We conclude that the foregoing is substantial evidence of conduct detrimental to the efficient operation of the IPD and the Merit Board's finding is not arbitrary and capricious. In sum, we conclude that substantial evidence supports the Merit Board's findings, and its decision to terminate Ashton was not arbitrary and capricious.[1]

---

[1] On cross-appeal, the City contests the trial court's denial of its motion to dismiss and its reversal of the Merit Board's findings on Ashton's violation of the IPD's pager policy, failure to improve performance,

CONCLUSION

Based on the foregoing, we conclude that the trial court's determination of legal error did not render the Merit Board's termination of Ashton's employment void. We also conclude that substantial evidence supports the Merit Board's findings, and its decision to terminate Ashton based upon loss of evidence, conduct detrimental to IPD, insubordination, and neglect of duty was not arbitrary and capricious.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur

---

and repeated violations of IPD Rules and Regulations. However, "[o]ne cannot appeal a judgment in his favor unless he is some manner aggrieved thereby." *Nehi Beverage Co., Inc. v. Petri*, 537 N.E.2d 78, 83 (Ind. Ct. App. 1989), *trans. denied*. In light of our conclusion that the trial court properly denied Ashton's petition, we decline to address the substance of the City's cross-appeal.